IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CHASE MANHATTAN BANK,<br><br>            Plaintiff,<br><br>     vs.<br><br>R.E. FRASCH, et al.,<br><br>            Defendant. | No. Misc. CV-F-89-185 REC<br><br>ORDER GRANTING IN PART AND DENYING IN PART ROBERT WILEY LOVELESS'S MOTION FOR SALE OF REAL PROPERTY |

On June 27, 2005, the court heard the Motion for Sale of Real Property "Dwelling" filed by judgment creditor Robert Wiley Loveless (hereinafter referred to as Loveless). This motion was opposed by the current owners of the property, Gerald E. Schaefer and Deena L. Schaefer (hereinafter referred to as the Schaefers). Following oral argument, the Schaefers filed a supplemental opposition to the motion and Loveless filed a supplemental reply.[1] The court then ordered Loveless to file copies with the

---

[1] The court considers both supplemental briefs.

1

court of (1) Notice of Pendency of Action recorded on June 8, 1999 as Instrument No. 0199081437 in the Kern County Records; (2) Loveless's motion to reinstate appeal filed in the Ninth Circuit appeal No. 00-15770 on April 24, 2001; and (3) Loveless and Frasch stipulation to dismiss Ninth Circuit appeal No. 00-15770 filed in the Ninth Circuit on April 24, 2001.

All briefing now being complete, the court hereby grants in part and denies in part the Motion for Sale of Real Property "Dwelling" filed by Loveless.

Loveless moves the court for an order allowing and directing the levy and sale of real property commonly referred to as 412 Vista Verde Way, Bakersfield, California to satisfy the $2,188,978.13 money judgment previously entered and renewed against Judgment Debtor Constance Frasch.

A. <u>Background</u>.

On March 13, 1989, a Judgment was entered in the United States District Court for the Western District of Oklahoma in favor of Loveless and against Constance Frasch. An Abstract of Judgment was filed in this court on August 15, 1989 and was recorded by the Kern County Recorder on August 22, 1989.

1. <u>Bankruptcy No. 89-14197</u>.

On January 4, 1993, Frasch filed a bankruptcy petition in the United States Bankruptcy Court for the Eastern District of California, Case No. 89-14197. On July 24, 1995, the Bankruptcy Court issued its Order Approving Trustee's No Asset Report,

2

Discharging Trustee and Closing Case.

On May 6, 1999, upon Frasch's motion to reopen the bankruptcy to avoid Loveless's lien on the real property, the bankruptcy was reopened. On June 6, 1999, the Bankruptcy Court issued its Order Granting Motion to Avoid Lien of Robert Wiley Loveless.

On June 8, 1999, Loveless recorded a Notice of Pendency of Action in Kern County. The Notice of Pendency of Action refers to "Bk. No. 189-04197B-7K" in the United States Bankruptcy Court for the Eastern District of California. The Notice of Pendency of Action states in pertinent part:

> NOTICE IS GIVEN that the above action was commenced on June 8, 1999, in the above court by Robert Wiley Loveless, Movant; the action is now pending in the above court.
>
> The above action alleges a Judgment Lien claim affecting certain real property that is situated at 412 Vista Verde Way, Bakersfield, in Kern County ....

The Notice of Pendency of Action was filed in the Bankruptcy Court on August 19, 1999.

Loveless then filed a motion to reconsider in the Bankruptcy Court, which motion was denied by the Bankruptcy Court on August 11, 1999.

On August 19, 1999, Loveless filed an appeal, which appeal was heard by this court. See Loveless v. Frasch, No. CV-F-99-6239 REC. By Opinion filed on April 14, 2000, the court affirmed the Bankruptcy Court.

Loveless then appealed this court's affirmance of the

Bankruptcy Court's ruling to the Ninth Circuit. On April 1, 2001, the Ninth Circuit dismissed the appeal because of Loveless's failure to prosecute it. A certified copy of the Order dismissing the appeal was filed in the Bankruptcy Court on April 25, 2001. However, on April 24, 2001, Loveless filed a motion in the Ninth Circuit to vacate the order dismissing the appeal and to reinstate the appeal.[2] In support of this motion was filed the Declaration of Ray T. Mullen, who averred in pertinent part:

> 3. On April 3, 2001, the parties to this appeal reached a tentative settlement of this matter which provided, inter alia, for the dismissal of the within appeal with a remand to the underlying Bankruptcy Court to vacate its prior Order Avoiding Lien which was the basis of this appeal.
>
> 4. While the Stipulation and Order were being prepared by Appellee's counsel, Appellant's counsel became ill and was absent from the office when the corrected draft of the Stipulation and Order arrived and was unable to timely advise the Court of the pending resolution. After returning to work on April 23, 2001, I confirmed with counsel

---

[2] At oral argument in connection with the instant motion, Loveless asserted that he did not prosecute the appeal because Frasch had filed another bankruptcy petition in the United States Bankruptcy Court for the Eastern District of California, Bk. No. 00-15423 on July 10, 2000 and he could not prosecute the appeal because of the automatic stay. While it appears that Loveless could not have prosecuted the appeal without obtaining a lifting of the automatic stay from the Bankruptcy Court, see In re Tampa Chain Company, Inc., 835 F.2d 54 (2nd Cir. 1987), the docket in Bk. No. 00-15423, of which the court takes judicial notice, establishes that the bankruptcy was dismissed on March 22, 2001, with a formal order of dismissal being entered on April 6, 2001. Furthermore, Mr. Mullen's declaration in support of re-opening the appeal filed in the Ninth Circuit makes no mention that the appeal was not prosecuted because of the automatic stay.

4

>         for Appellee that he had indeed received the
>         previously executed Stipulation and Order
>         thereon and that he would forward the
>         pleadings to the within Court by overnight
>         mail, and that he had no opposition to the
>         granting of the within Motion to vacate the
>         order dismissing the case and reinstating the
>         appeal subject to the submission of the
>         Stipulation and Order previously negotiated
>         between the parties.
>
>         5.   Therefore this Court is requested to
>         grant this motion to vacate its prior Order
>         dismissing the appeal, and to reinstate the
>         within appeal, subject to the Stipulation
>         being separately submitted to the within
>         Court by Appellee's counsel.

Attached to Mr. Mullen's declaration was a copy of the Stipulation to Dismiss Appeal as Moot:

>         1.   The above captioned appeal has become
>         moot by virtue of the Appellee's imminent
>         probable loss of her interest in and to the
>         real property that is the subject of the
>         order from which the appeal was taken.
>
>         2.   The above captioned appeal should be
>         dismissed as moot and remanded to the United
>         States Bankruptcy Court, Eastern District of
>         California, with instructions to vacate its
>         order from which this appeal was taken ....

On September 17, 2001, the appeal was reinstated and the Ninth Circuit, pursuant to the stipulation of the parties, remanded the matter to this court for consideration of the parties' stipulation to remand the matter to the bankruptcy court. The mandate was not issued by the Ninth Circuit until October 11, 2001. On February 28, 2002, this court issued its "Order Remanding Case to Bankruptcy Court After Dismissal of Appeal Based on Mootness", wherein the court ruled:

>         Based on the representations and

5

> stipulations, in open court, of counsel, and good cause appearing, IT IS ORDERED that this matter is remanded to the United States Bankruptcy Court for the Eastern District of California, Fresno Division, and the Bankruptcy Court is instructed to vacate the 'Order Avoiding Judicial Liens' that it entered on June 11, 1999.

The Bankruptcy Court complied by Order filed on September 6, 2002.

        2.   <u>No. Misc. CV-F-89-185 REC</u>

On July 7, 1999, Loveless filed an Application for Renewal of Judgment with this court, which application was filed in No. Misc. CV-F-89-185.  When Loveless filed the application to renew the judgment, the Bankruptcy Court had already issued its Order Granting Motion to Avoid Lien of Robert Wiley Loveless, a fact not disclosed to this court by Loveless.  By Order filed on July 9, 1999, the court granted that application and a Judgment was entered on July 9, 1999 renewing the prior judgment.  However, also on July 9, 1999, the court, having learned of the Bankruptcy Court's ruling, issued an Order staying execution of the renewed judgment pending further court order.  A hearing was held on July 19, 1999 and an order to show cause why the renewed judgment should not be vacated and sanctions was issued against Loveless and/or Mr. Mullen.  Thereafter, Frasch filed a motion to vacate the renewed judgment and for sanctions.  Frasch's motion was continued a number of times and eventually was heard on January 24, 2000 and taken under submission.  However, it does not appear that any ruling was issued by the court.  On February 27, 2002,

6

another Order to Show Cause why the renewed judgment should not be vacated was issued and eventually heard on March 11, 2002. The minute order for March 11, 2002 states that the matter has been resolved and that a proposed order is to be submitted. On September 5, 2002, the court issued its Order Dismissing Order to Show Cause, ruling in pertinent part:

> Defendant's counsel, David R. Jenkins, represented to the Court that the legal grounds upon which the Defendants had objected to the renewal of the judgment had, with the passage of time, become inapplicable. Based on such representations, and by consent of the parties, the Order to Show Cause issued on February 27, 2002 is dismissed.

In support of the instant motion is filed the Declaration of Ray T. Mullen. Mr. Mullen avers in pertinent part:

> 5. An Abstract of Judgment in the amount of the original Judgment was duly recorded in the Kern County Records against the Judgment Debtor's real property, including the Subject Real Property, on August 22, 1989 ...; the Renewed Judgment was also recorded against the Subject Property on July 12, 1999 as Document number: 1099099222. Thus, there was no gap in the continuation of the priority of the Judgment Lien.
>
> 6. At a point in time prior to the renewal of the Loveless Abstract of Judgment [on July 9, 1999], the Judgment Debtor refinanced the debt on the Subject Real Property; however, no payment was made to the Judgment Creditor, nor was any subordination requested or provided concerning said Judgment Lien. Instead, the senior deed of Trust was reconveyed and replaced by a new deed of Trust junior in time and priority to the Judgment Lien of Loveless.
>
> 7. Declarant is informed and believes and thereon declares that subsequent thereto, the

7

new Deed of Trust beneficiary commenced, and eventually completed, non-judicial foreclosure proceedings against the Judgment Debtor and the Subject Real Property. Subsequent thereto, a Trustee's deed was recorded terminating the Judgment Debtor's interest in the Subject real Property [sic], but leaving the Loveless Judgment Lien in place.

8. On or about June 22, 1999, Judgment Debtor, after having reopened her prior bankruptcy proceeding, caused to be recorded in the Kern County Records, as Document number: 0199088823, an Order Avoiding Liens purportedly avoiding the Judgment Lien of Judgment Creditor pursuant to 11 USC §522(f); said Order was appealed and on June 8, 1999 a Notice of Pending Action was recorded in the Kern County Records, as Document number: 0199081437; after further appeal and an eventual stipulation among the parties, on September 6, 2002, the United States Bankruptcy Court issued an Order Vacating Order Avoiding Liens, thereby leaving in place the Loveless Judgment Lien, which was recorded in the Kern County Records on August 6, 2004 as Instrument Number 0204185410.

9. On or about October 25, 2001, the current owners: Gerald E. Schaefer and Deena L. Schaefer, Husband and Wife, as Joint Tenants, received title to the Subject Real Property still encumbered by the Loveless Judgment Lien.

10. No payment to the Judgment Creditor or satisfaction of the Judgment has ever been provided to the Judgment Creditor including as part of the transfer of the encumbered Subject Real Property. Thus, there have been no payments made or credits applied to the Total Judgment of $2,188,978.13.

11. The Judgment Debtor, Constance Jean Frasch, has received a discharge of her personal obligations under the Loveless Judgment; however, said Judgment remains a valid Judgment Lien against the Subject Real Property, now owned by [the Schaefers].

8

>   12.  Based upon the Litigation Guarantee obtained from First American Title Company ..., there are no senior liens to the Loveless Judgment Lien against the Subject Real Property.
>
>   13.  Declarant believes that neither the Judgment Debtor nor the current owners are entitled to a homestead exemption pursuant to CCP §704.710© senior to the Loveless Judgment Lien.
>
>   14.  Declarant further believes and thereon declares that neither the Judgment Debtor, nor the Schaefers, have any exempt equity in the Subject Real Property; that there are no laws, case decisions, nor statutes that prevent the Judgment Creditor, and/or the Sheriff of Kern County as his levying agent, from proceeding with and completing the levy and sale of the Subject Real Property for satisfaction of the above-described Judgment; and that proceeding with said levy and sale is proper.
>
>   15.  Finally, Declarant is unaware of any reason or good cause why the requested levy and sale cannot proceed at this time with the proceeds thereof to be distributed to the Judgment Creditor, Robert Wiley Loveless.

In opposition to this motion is filed the Declaration of Gerald E. Schaefer, wherein Mr. Schaefer avers in pertinent part:

>   3.  With my wife, I am the current owner, in fee simple, of certain real property located at 412 Vista Verde Way, Bakersfield ....
>
>   4.  As evidenced by the Grant Deed, my wife and I purchase [sic] the Property in October 2001, and in doing so we paid thousands of dollars to the then record owner, Bankers Trust Company of California.
>
>   5.  At the time of our purchase of the Property neither my wife, nor I, had any personal or actual knowledge that Loveless had ever recorded an Abstract of Judgment, or that Loveless ever claimed a lien interest in the Property.  Indeed, until we were served

> with the Loveless Motion, we never even knew
> that Loveless even had a judgment against
> Constance Frasch or that he was claiming a
> lien on our property.
>
> 6.  When we purchased the Property, we
> believed that we were the sole and exclusive
> owners of a fee simple in the Property and
> that there were no other liens, encumbrances,
> etc., actual or claimed as pertaining to the
> Property.  We believed, that since we paid
> cash for the Property, that we held free and
> clear title in our name only, and that no
> other entity or person had any right, title,
> lien or other interest, whatsoever, in the
> Property.

Also filed in opposition to Loveless's motion is the Declaration of Dixon G. Kummer, counsel for the Schaefers, who avers in pertinent part:[3]

> 16.  At the time of the Trustee's Sale, the
> conveyance of the Trustee's Deed and at the
> time of the conveyance to the Schaefers the
> public 'Record' at the Kern County Recorders'
> Office was such that no other encumbrance or
> lien existed against the property.
>
> 17.  When the Schaefers took record title to
> the property in question, it was free and
> clear of any and all liens, including the
> Loveless Abstract of Judgment Lien.
>
> 18.  In September 2002, approximately a year
> after Frasch lost the real property through
> the Trustee's Sale, (and nearly two years
> from the closing of the Bankruptcy
> proceedings), Frasch and Loveless, once
> bitter enemies, stipulate to the reopening of
> the Bankruptcy proceedings and further
> stipulate to an 'Order Vacating the Order
> Avoiding Lien.'  An additional two years then
> pass, when Loveless causes the 'Order' to be
> recorded.

---

[3] Loveless requests that the court strike Mr. Kummer's declaration on various grounds.  This request is denied.

10

> 19. After being retained by the Schaefers, I contacted Loveless' counsel. During my initial conversation with Loveless' counsel, it was stated that Loveless' purpose in bringing the pending Motion and pursuing the Writ, <u>was not</u> to actually force the sale of the real property and damaged [sic] the Schaefers, but to locate and obtain 'insurance,' monies [sic] from either the lender or a title insurance company.
>
> 20. I also contacted Frasch's Bankruptcy Counsel, and during my conversation with him it was communicated that Frasch and Loveless has [sic] reach an agreement, by which in exchange for Frasch's stipulation to set aside the Order Avoiding Liens, (which no longer benefitted her, having lost the real property through foreclosure), Frasch would receive some of the monies, if any, that Loveless would recover from either the lending institution, the title insurance company or the current homeowners, the Schaefers.
>
> 21. The existence of an agreement by which Frasch would receive money in exchange for her stipulation to set aside the Order Avoiding Liens, was confirmed by Loveless' counsel on May 16, 2005. On that date, Loveless' counsel stated to me that an agreement has been entered into between Loveless and Frasch, by which Frasch would receive up to $45,000 of any monies obtained by Loveless in exchange for her stipulation setting aside the Order Avoiding Liens.

In reply, Mr. Mullen submits a declaration in which he avers in pertinent part:

> 2. I have never attempted to conceal any relevant information related to this Motion from this Court or opposing counsel, as would appear by his unfortunate reliance upon my candor to accuse me of attempting to 'pull the wool over the eyes of the Court.' To the contrary, both myself, and counsel for Frasch have fully disclosed to Mr. Kummer the entire background of the case so that he would be educated in his defense of the Respondents

11

> and properly represent them.  Instead he has chosen to impugn me with his false accusations and insinuations.
>
> ...
>
> 5.  Contrary to Paragraph 18, Movant and Mrs. Frasch were not 'bitter enemies'; they hardly knew each other.  Furthermore, no stipulation to 're-open' Mrs. Frasch case [sic] was necessary since it had not been completely closed due the pending appeal and the intervening Chapter 13 case of Mrs. Frasch.
>
> 6.  I never stated that Loveless purpose [sic] in bringing the pending motion was not to force the sale of the Respondents' house; that was precisely the purpose.  I told Mr. Kummer that it was unfortunate that the Respondents were the current owners and that it was hoped on their behalf that they had a policy of title insurance which could and should provide relief to them rather than have their residence sold.  I expressed my concern that the Litigation Guaranty had failed to disclose a lender on the Subject Real Property and asked Mr. Kummer if such a policy existed in order that he might obtain redress from them on behalf of the Respondents without the need for the completion of a sale.  To date, despite the existence of an escrow indicating the Respondents' purchase from the foreclosing lender, no such information has been provided.

B.  <u>Subject Matter Jurisdiction</u>.

The court <u>sua sponte</u> concludes that it has subject matter jurisdiction.

As noted, this miscellaneous action was opened in 1999 in order to process Loveless's application to renew the judgment. After Loveless and Frasch stipulated to the remand of the bankruptcy appeal to the Bankruptcy Court and then stipulated to vacate the Bankruptcy Court's order vacating Loveless's judgment

12

lien, this miscellaneous action became moot. Of course, the Schaefers were not named as parties to this miscellaneous action because, until 2001, they had no interest in the property. In fact, the Schaefers are not named as parties to this miscellaneous action, having only been given notice of the pending motion by Loveless. Rule 69(a), Federal Rules of Civil Procedure, provides in pertinent part:

> Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable. In aid of the judgment or execution, the judgment creditor or a successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held.

As explained in Wright, Miller & Marcus, 12 Federal Practice and Procedure, § 3013, pp. 158-159 (1997):

> The federal court has ancillary or supplemental jurisdiction for supplementary proceedings to enforce its judgment. As the Supreme Court recognized a century and a quarter ago, '[p]rocess subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate for the purposes for which it was conferred by the Constitution.' Recently, the Supreme Court has reaffirmed the federal court's 'inherent power to enforce its judgments,' and noted that it has

13

>'approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection of federal judgments - including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances.' But this power is limited to efforts to enforce the federal court's judgment in a case over which it has jurisdiction, and it does not extend to new lawsuits filed to impose related liabilities on others.

Here, the court does have subject matter jurisdiction to enforce Loveless's judgment pursuant to the instant motion. The Schaefers are the successors in interest to Frasch of the real property on which Loveless asserts he has a judgment lien. Therefore, the instant motion is ancillary to Loveless's application to renew the judgment.[4]

    C.  <u>Effect of Notice of Pendency of Action</u>.

As noted, Loveless recorded a lis pendens in Kern County with respect to the property on June 8, 1999.

Bankers Trust Company of California acquired the real

---

[4] The court was concerned that Loveless had committed fraud on this court when he applied to renew the abstract of judgment without advising this court that the Bankruptcy Court had previously issued an order vacating his judgment lien. The court obviously discovered this attempted fraud almost immediately because the court stayed execution of the renewed abstract of judgment pending further order of the court. That order was issued on July 9, 1999. Notwithstanding the stay order and according to the Litigation Guarantee submitted with the instant motion, Loveless then proceeded to record the Renewed Judgment in a Civil Action on July 12, 1999. Apparently, Loveless did not record the stay order and clearly did not comply with it. By recording the Renewed Judgment, Loveless not only violated this court's stay order, he also ignored the Bankruptcy Court's Order Vacating Liens. However, the court concludes that these events have no impact on the resolution of this motion because of the recording by Loveless of the lis pendens.

14

property on September 26, 2001 at a trustee's sale.  The Schaefers purchased the real property from Bankers Trust on October 17, 2001.

"The purpose of a lis pendens is to give constructive notice of an action affecting real property to persons who subsequently acquire an interest in that property, so that the judgment in the action will be binding on such persons even if they acquire their interest before the judgment is actually rendered." Bishop Creek Lodge v. Scira, 46 Cal.App.4th 1721, 1733 (1996); see also La Paglia v. Superior Court, 215 Cal.App.3d 1322, 1326 (1989).

The Schaefers argue that Loveless cannot rely on the lis pendens.  In so arguing, they note that the appeal to the Ninth Circuit from this court's affirmance of the Bankruptcy Court's Order Granting Motion to Avoid Lien of Robert Wiley Loveless was dismissed on April 1, 2001 and a certified copy of that dismissal was filed in the Bankruptcy Court on April 25, 2001.  The Schaefers refer the court to Garcia v. Pinhero, 22 Cal.App.2d 194, 197 (1937):

> The lis pendens notice that may properly be recorded in an action which in some manner affects the title or right of possession to real property is purely incidental to the action wherein it is filed.  It refers specifically to such action, and has no existence apart from it.  Its sole object is to afford constructive notice that this particular action is pending.  When, therefore, the action has been terminated by the entry of a judgment and by expiration of the statutory time within which an appeal from the judgment may be taken, the notice of lis pendens has fully served its purpose.  The action of which it was an incident has

15

come to an end. It is no longer pending.

However, as noted, Loveless moved in the Ninth Circuit to reinstate the appeal. The Ninth Circuit reinstated the appeal on September 17, 2001. The sale of the real property to Banker's Trust and Banker's Trust's sale to the Schaefers occurred after the Ninth Circuit reinstated the appeal. Consequently, at the time the Schaefers acquired the property, the action to which the Notice of Pendency of Action was incident was not terminated. Therefore, the Schaefers had constructive notice of the appeal to the Ninth Circuit from the Bankruptcy Court's Order Granting Motion to Avoid Lien of Robert Wiley Loveless.

Consequently, the court concludes that Loveless is entitled to sell the real property to satisfy the judgment lien recorded against the property.[5]

D. <u>Homestead Exemption</u>.

Loveless contends that because Frasch has not lived on the property since it was sold to the Frasch's in foreclosure in October 2001, the homestead exemption is not applicable. Loveless argues:

> Since the Judgment debtor is no longer in

---

[5] The allegations that counsel for Loveless and for Frasch are colluding to defraud the Schaefers and/or a title insurance company are discounted by the court. The relevant inquiry is whether the Notice of Pendency of Action gave the purchasers of the real property constructive notice of the litigation concerning the Bankruptcy Court's order vacating the Loveless lien. In addition, the court notes that there is no evidence that the Schaefers conducted a title search before purchasing the property or that the Schaefers obtained title insurance before they purchased the property.

16

>       possession of the Subject Real Property, as
>       either an occupant or owner, and the
>       Schaefers are not the Judgment Debtor herein
>       but merely obtained title to the Subject real
>       Property subject to the Loveless Judgment
>       Lien, there would appear to be no need for
>       any further determination of any homestead
>       exemption applicability or amount thereof.

California Code of Civil Procedure §§ 704.710© and 704.730 define the "homestead exemption" in terms of a judgment debtor or the spouse of a judgment debtor.  California Code of Civil Procedure § 704.740(a) provides in pertinent part:

>       (a) Except as provided in subdivision (b),
>       the interest of a natural person in a
>       dwelling may not be sold under this division
>       to enforce a money judgment except pursuant
>       to a court order for sale obtained under this
>       article and the dwelling exemption shall be
>       determined under this article.

Therefore, by California statute, the Schaefers' interest in the real property is not subject to a homestead exemption and, to that extent, Loveless's motion has merit and is granted. However, it is clear that Frasch will be receiving the benefit of the homestead exemption from Loveless after the satisfaction of the judgment lien by the sale of the real property.  Asking this court to issue an order that Frasch is not entitled to the homestead exemption essentially is asking this court to state something that is not in fact true - Frasch will be receiving the equivalent of the homestead exemption from Loveless after the sale.  Therefore, to the extent that Loveless moves the court to rule that Frasch is not entitled to the homestead exemption, the motion is denied.

17

IT IS SO ORDERED.

**Dated: August 4, 2005**  /s/ **Robert E. Coyle**
668554                     UNITED STATES DISTRICT JUDGE